**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
BILJANA RAGUSA,

                        Plaintiff,

         - against -

MALVERNE UNION FREE SCHOOL
DISTRICT, MALVERNE UNION FREE
SCHOOL DISTRICT BOARD OF
EDUCATION and MARY ELLEN FREELEY
as SUPERINTENDENT OF SCHOOLS,

                        Defendants.
------------------------------------------------------------X

**ORDER**

CV 06-4905 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff, a high school mathematics teacher, commenced this action seeking damages based on Defendants' alleged (1) discrimination based upon her disability, age, and national origin, including Defendants' decision to deny Plaintiff tenure, and (2) failure to accommodate Plaintiff's disability, in violation of federal and state law [DE 1].[1] Before the Court is Plaintiff's motion to compel Defendants to produce documents responsive to Document Request Number 12 contained in Plaintiff's Initial Set of Document Requests [DE 19]. Document Request Number 12 demands the production of "any and all documents, notes or recordings of any kind including but not limited to the grades and/or evaluations given to any and all pupils regarding academic performance and behavior in the Plaintiff's former department of employment by the

---

[1] Plaintiff brings her claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, 42 U.S.C. §§ 1983, 1985, 1986, and 1988, the New York State Constitution, Article V Section 6, the New York State Executive Law § 290 et seq., and the New York State Education Law § 3031 [DE 1].

Defendants, Mathematics Department, from June 2002 to present." Pl. Mem. at 1.[2] I have reviewed the arguments set forth in support of Plaintiff's motion to compel [DE 19, 22], as well as the arguments raised by Defendants in their opposition [DE 20, 21]. For the reasons set forth herein, Plaintiff's motion to compel is GRANTED.

## II.  PARTIES' ARGUMENTS

Plaintiff argues that the requested records are relevant to this action because they will allow Plaintiff to "show that the reasons Defendants gave for their actions are a mere pretext for discrimination." Pl. Mem. at 3. Specifically, Plaintiff wishes to use these records "to show that (1) her class assignments showed an increase in the number of special education students, especially those students with BIPs [Behavior Intervention Plans] that might affect classroom discipline; and (2) that students reached their IEP [Individual Education Plan] goals under her tutelage." *Id.* Plaintiff also requests "other students' scores and records so that a comparison can be made between those students assigned to [Plaintiff] and those assigned to other teachers in the math department." *Id.* at 4. Plaintiff notes that her "classroom observations are based on her interactions with students. If her students have special needs, then their education and behavior plans are particularly relevant as to whether the observer properly evaluated [Plaintiff's]

---

[2] "Pl. Mem." refers to Plaintiff's Memorandum of Law in Support of Motion to Compel Disclosure [DE 19].

interactions with her students, especially after her brain surgery."[3] Reply Mem. at 2.[4]

Plaintiff asserts that any privacy concerns that may attach to the requested student records may be disposed of, as "[t]his information may be redacted in a manner sufficient to distinguish each student without disclosing complete identifiable personal information." Pl. Mem. at 5; Reply Mem. at 3.

Defendants argue that the requested documents are not relevant to this action because they will not "go toward meeting [Plaintiff's] burden" to establish that Defendants' articulated legitimate non-discriminatory reasons for denying Plaintiff tenure were merely a pretext for unlawful discrimination. Def. Mem. at 1.[5] Defendants allege that Plaintiff was not denied tenure "because of her students' grades" or "because of how she handled special education students." *Id.* at 2. Rather, Defendants submit that Plaintiff was denied tenure for three specific reasons, which are allegedly supported by classroom observations of Plaintiff: (1) poor classroom management skills, (2) inability to engage students from bell to bell, and (3) inability to explain material in a simple manner for students to understand and follow. *Id.* at 1.[6] Defendants assert

---

[3] On January 26, 2003, Plaintiff underwent emergency brain surgery following a diagnosis of acoustic neuroma, a brain tumor that required immediate surgical removal. Compl. ¶ 2. Plaintiff contends that, although the surgery was "generally considered a success," following the surgery Plaintiff suffered "facial paralysis on her right side, loss of hearing in her left ear, balance problems including vertigo, dizziness, the inability to walk straight and/or long distances, and speech and visual impairments." *Id.*

[4] "Reply Mem." refers to Plaintiff's Memorandum of Law in Further Support of Motion to Compel Disclosure [DE 22].

[5] "Def. Mem." refers to Defendants' Memorandum of Law, submitted in opposition to Plaintiff's Motion to Compel [DE 21].

[6] Defendants cite to Exhibit A, annexed to their motion, which is an April 20, 2005 letter from the Superintendent of Schools to Plaintiff setting forth these three reasons that the

that "[t]here is nothing in any of [Plaintiff's] students' individual education plans . . . that would help plaintiff disprove the simple proposition that she was denied tenure because of her classroom observations and not because of any discrimination." *Id.* at 2.

Defendants further argue that the requested records "are private and are protected by the Family Educational Rights and Privacy Act (FERPA)," 20 U.S.C. § 1232, et seq. *Id.* at 3. Defendants note that a plaintiff "seeking disclosure of students' records has a 'significantly heavier burden . . . to justify disclosure than exists with respect to discovery of other kinds of information, such as business records.'" *Id.* (quoting *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y. 1977)). Accordingly, Defendants assert, because the requested records are "not relevant to the claims at hand," in that they will not help Plaintiff "disprove" Defendants' proffered legitimate non-discriminatory reasons for her denial of tenure, Plaintiff has failed to make the necessary showing that she has a sufficient need for the disclosure of these records. *Id.*

### III. STANDARD OF REVIEW

A motion to compel is entrusted to the sound discretion of the district court. *Am. Sav. Bank, FSB v. UBS Paine Webber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000). The Second Circuit has noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 79 (2d Cir. 1998) (citing *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992)). A district court is considered to

---

Superintendent did "not intend to recommend that the Board [of Education] award [Plaintiff] tenure" [DE 20].

have abused its discretion only "if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

## IV. DISCUSSION

### A. Relevant FERPA Provisions and Framework

The Family Educational Rights and Privacy Act of 1974 ("FERPA") provides in relevant part as follows:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, unless–
>
> (A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or
>
> (B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.

20 U.S.C. § 1232g(b)(2).

The purpose of FERPA is to "assure parents of students . . . access to their education records and to protect such individuals' right to privacy by limiting the transferability (and disclosure) of their records without their consent." *Rios v. Read*, 73 F.R.D. 589, 597 (E.D.N.Y. 1977) (quoting 120 Cong. Rec. S21497 (daily ed. Dec. 13, 1974) (joint remarks of Sen. Buckley and Sen. Pell)). FERPA does not provide a privilege that prevents the disclosure of student records. *Id.* at 598. "Rather, by threatening financial sanctions, it seeks to deter schools from

5

adopting policies of releasing student records." *Id.*

Under the provisions of the statute, a school would not be subject to sanctions for disclosure of education records covered by FERPA when such disclosure was made pursuant to a judicial order. *Id.*; *see also* 20 U.S.C. § 1232g(b)(2)(B). The inquiry, however, does not end there because the "privacy violations" that result from any disclosure of FERPA-protected education records are "no less objectionable simply because release of the records is obtained pursuant to judicial approval unless, before approval is given, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students." *Rios*, 73 F.R.D. at 599 (citing S. Rep. No. 93-1026, at 187 (1974), reprinted in 1974 U.S.C.C.A.N. 4251 ("The need to protect students' rights must be balanced against legitimate Federal needs for information.")).

Accordingly, a party seeking disclosure of education records protected by FERPA bears "a significantly heavier burden . . . to justify disclosure than exists with respect to discovery of other kinds of information, such as business records." *Rios*, 73 F.R.D. at 598. Courts, both within and outside this Circuit, have demonstrated a willingness to allow the disclosure of protected education records when the moving party has met its "significantly heavier burden" to show that its interests in obtaining the records outweighed the students' privacy interests. *See, e.g., Nastasia v. New Fairfield Sch. Dist.*, No. 3:04 CV 925 (TPS), 2006 WL 1699599, * 1-2 (D.Conn. June 19, 2006) (issuing judicial order compelling disclosure of (1) the identification of another student who had made complaints similar to the plaintiff's, which was "arguably relevant" to plaintiff's claims and was "in the exclusive control of the defendant," and (2) records of similar complaints when the information was "clearly relevant" to plaintiff's claims and the

defendant's burden of production was "minimal"); *Davids v. Cedar Falls Cmty. Sch.*, No. C96-2071, 1998 WL 34112767, * 3 (N.D.Iowa Oct. 28, 1998) (finding plaintiff's need for disclosure of education records, which would help him attempt to prove his allegations that his school "engaged in a practice of disparate discipline of minority and non-minority students," outweighed the students' privacy interests); *Rios*, 73 F.R.D. at 599 (determining that plaintiff demonstrated sufficient need for students' academic records and test results when it would be "impossible to prove" the alleged Title VI violations without such records).

B. **Application to Plaintiff's Motion to Compel**

Although Defendants' obligations and concerns regarding FERPA are well-grounded, Defendants' arguments in resisting disclosure of the requested information seek to narrow the scope of discovery to a restrictive interpretation of the brief statements contained in the Superintendent's April 20, 2005 letter setting forth three reasons for the denial of tenure [DE 1, Ex. D]. The crux of Plaintiff's Complaint, however, is that these reasons (which Defendants allege are supported by the classroom observation documents) are a pretext for discrimination [*see, e.g.,* DE 1 at ¶ 39]. Contrary to Defendants' assertions, Plaintiff is not required to prove these allegations (or "disprove" Defendants' articulated reasons for the denial of tenure) at this juncture. Rather, Plaintiff has the right to test Defendants' proffered defenses.

In determining this issue, I have reviewed and considered, among other things, the following documents and allegations that are relevant to the issue of pretext as well as to Defendants' position that Plaintiff was denied tenure for legitimate, non-discriminatory reasons:

7

(1) Complaint, especially paragraphs 2, 22, 23, 25, 33-36, 39-42 [DE 1]

(2) Exhibits D, L, M, N, O, and P annexed to the Complaint [DE 1]

(3) June 2004 results of Math Regents Examinations for Plaintiff's students [DE 1, Ex. A]

(4) The assignment of five of seven special education students in Grade 6 to Plaintiff [DE 1, Ex. A]

(5) Classroom observation reports for Plaintiff both prior to and after Plaintiff's January 26, 2003 brain surgery [Exhibit B to Declaration of Brian S. Sokoloff, dated September 17, 2007, submitted in connection with Defendants' Opposition to Plaintiff's Motion to Compel Discovery, DE 20]. In addition, I have thoroughly reviewed the arguments by counsel for both sides, including the supporting citations to case law and the FERPA statute itself.

Having considered these authorities, as well as the Code of Federal Regulations, I find that the information sought by Plaintiff's counsel is protected by FERPA. The requested documents relating to students' grades, evaluations, and academic performance are undoubtedly "education records" within the meaning of FERPA, *see* 34 C.F.R. § 99.3, and the requested records contain personally identifiable information about students. *See id.* This conclusion, however, does not end the analysis, for two reasons. First, there is nothing in FERPA that would prohibit Defendants from releasing education records that had all "personally identifiable information" redacted. *See U.S. v. Miami Univ.*, 294 F.3d 797, 824 (6th Cir. 2002) (noting that parties "may still request student disciplinary records that do not contain personally identifiable information. Nothing in the FERPA would prevent the Universities from releasing properly

8

redacted records."); *Bd. of Tr., Cut Bank Pub. Sch. v. Cut Bank Pioneer Press*, 160 P.3d 482, 487 (Mont. 2007) (noting that "other jurisdictions have held that once a record is redacted, it no longer contains 'information relating directly to a student' and is therefore not an educational record under FERPA") (collecting cases).

Second, FERPA permits Defendants to disclose students' education records to comply with a judicial order. *See* 34 CFR 99.31(9)(I). In this case, Plaintiff has demonstrated a need for the requested education records – she has shown that these records are relevant at least to some degree in that they may aid her in an attempt to demonstrate that Defendants' articulated reasons for the denial of tenure were a pretext for unlawful discrimination. "Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy"). This Court has held that the "rights of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts," and that the "liberal" discovery rules tend "toward admitting as much evidence as possible so that the facts may be accurately determined." *Apicella v. McNeil Laboratories, Inc.*, 66 F.R.D. 78, 82 (E.D.N.Y. 1975). Furthermore, this Court has made clear that the scope of a Rule 34 request is governed by the liberal standards of Rule 26. *See United States v. 50.34 Acres of Land in East Hills*, 13 F.R.D. 19, 21 (E.D.N.Y. 1952).

I find that the records requested by Plaintiff are relevant on the issue of pretext, whether or not Plaintiff is ultimately able to establish such pretext. Plaintiff's allegations at this stage in the proceedings are sufficient to warrant the production of these materials. Some of the supporting allegations include the following claims:

- After returning from medical leave in February 2003, Plaintiff says she requested a reasonable accommodation that all of her classes and prep periods be assigned to a single classroom. That request was purportedly denied. Compl. ¶ 21.

- A request for the same reasonable accommodation was made prior to the 2003-2004 school year and was again denied. *Id.* ¶ 22.

- In January 2004, during the middle of the school year, Defendants granted a request for a reasonable accommodation to another teacher. *Id.* ¶ 23.

- In September 2004, Plaintiff's room assignments were changed, requiring her to teach in three different classrooms in the high school and one classroom in the junior high school, which was located across the street. *Id.* ¶ 25.

- Plaintiff's classroom observations from the commencement of her employment until October 2003 are generally positive and consistently reflect a "Meets District Standards" rating. The first observation that rated Plaintiff as "Needs Improvement" in four of 17 categories of "Teaching Effectiveness" was rendered on October 20, 2003. *See* Declaration of Brian S. Sokoloff, Esq., Ex. B; Compl. ¶¶ 40-42.

- A second observation in that same time frame (dated October 21, 2003), apparently performed by Glenda Yost, rated Plaintiff as "Meets District Standards" in 30 of 31 traits categorized as "Classroom Atmosphere," "Teaching Effectiveness," and "Personal Qualities." A third observation dated October 24, 2003 and completed by Chairperson Rose Linda Ricca rated Plaintiff as "Meets District Standards" in 24 of 30 categories, with one item designated "Not Observed/Not Applicable." *See* Declaration of Brian S. Sokoloff, Esq., Ex. B.

Plaintiff has demonstrated that the requested documents are relevant to aid her attempts to prove pretext, and her need for these records sufficiently outweighs the students' privacy interest, particularly since the records can be produced in redacted form with all personally identifiable information removed. *See Rios*, 73 F.R.D. at 598-99.

Accordingly, I find that an order requiring disclosure of the requested education records is appropriate here because the information Plaintiff seeks is arguably relevant to her claims and is in the exclusive control of Defendants. *See Nastasia*, 2006 WL 1699599, at *1. In order to temper the privacy concerns raised under FERPA, all the requested education records sought here must be produced in redacted form and subject to a protective order, as outlined below. While the Court is mindful of the privacy interest of the students involved, such interest is outweighed by Plaintiff's need to obtain the information contained in those records.

### **Protective Order**

The disclosure of the education records shall adhere to the following conditions:

1. Use of this information is limited to the lawsuit brought by Ragusa against Malverne Union Free School District, Malverne Union Free School District Board of Education, and Mary Ellen Freeley as Superintendent of Schools.

2. Access to this information is limited to Ragusa, her attorneys, and any expert hired to assist Ragusa at trial.

3. Since the records of approximately 100 math students are involved, Defendants are to provide Plaintiff's counsel with a list of the math grades for all students enrolled in math in the grade levels that Plaintiff taught during the time period at issue. All personally identifiable information is to be redacted from these records, and Defendants are directed to rearrange the grades so as to take them out of alphabetical order and to produce them in random order.

4. The IEPs and BIPs at issue are to be presented in the same manner as outlined in item number 3, above.

5. None of the redacted disclosed information is to be photocopied, except to provide one copy to Plaintiff's counsel and one copy to be marked for use at any depositions as needed. Any application to the Court by motion or otherwise that seeks to utilize this information as an exhibit shall provide that the exhibit(s) is filed under seal and not posted on ECF.

6. All of the disclosed and redacted information shall be returned to the Malverne Union Free School District at the conclusion of this lawsuit.

Defendants are directed to serve the redacted records upon Plaintiff's counsel within thirty (30) days of the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
February 19, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge