UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BILJANA RAGUSA,

                     Plaintiff,              **MEMORANDUM & ORDER**

    -against-                          06 CV 4905  (DRH) (AKT)

MALVERNE UNION FREE SCHOOL
DISTRICT, MALVERNE UNION FREE
SCHOOL DISTRICT BOARD OF
EDUCATION, and MARY ELLEN FREELEY
as Superintendent of Schools,

                     Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**LAW OFFICES OF LOUIS D. STOBER, JR., LLC**
Attorney for Plaintiff
350 Old Country Road
Suite 205
Garden City, New York 11530
By: Sheila S. Hatami, Esq.

**MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS, LLP**
Attorney for Defendants
The Esposito Building
240 Mineola Boulevard
Mineola, New York 11501
By: Brian S. Sokoloff, Esq.
     Jennifer E. Sherven, Esq.

**HURLEY, Senior District Judge:**

**INTRODUCTION**

         Plaintiff  ("Plaintiff") Biljana Ragusa filed the present action against defendants

Malverne Union Free School District (the "District"), Malverne Union Free School District Board

of Education (the "Board"), and Mary Ellen Freeley ("Freeley") (collectively, "Defendants"),

alleging, inter alia, that  Defendants discriminated against her based upon her disability,  gender,

age,  and  national  origin,  and  retaliated  against  her  for  opposing  discriminatory  practices.

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted.

Plaintiff was born on April 26, 1955, and is currently 53 years old. Plaintiff was born in Bosnia and Herzegovina.

## I.       *School Year 2002-2003; Plaintiff is Hired*

Plaintiff began working for the District in September 2002 as a math teacher for a probationary term of two years. Plaintiff is licensed to teach mathematics from grades 7 through 12. The District middle school and the high school are across the street from each other. Within the high school, a teacher can be assigned to more than one classroom. During the school year 2002-2003, Plaintiff taught five periods a day, in two different classrooms, in the high school.

### A.       *Plaintiff's January 2003 Surgery*

In January of 2003, Plaintiff underwent surgery for removal of an accoustic neuroma, or benign tumor, in her brain. Although the surgery was viewed as a success, it left Plaintiff with many side effects. According to Plaintiff's sworn declaration, after the surgery, she looked very different. (Pl.'s Decl., dated Jan. 4, 2008 ("Pl.'s Decl.") at ¶ 7.) She could not blink her right eye, she lost hearing in her left ear, she had difficulties with balance and walking in a straight line, and she couldn't enunciate properly because of paralysis on the right side of her face. (*Id.*) "Doctors" installed a gold plate in her eyelid to help her blink and she used, and still uses, eye drops to keep

her eye lubricated because her tear ducts are damaged.  (*Id.* ¶ 8.)  In April 2003, she had a bone-anchored hearing aid surgically implanted in her skull to help her hearing on the left side.  (*Id.* ¶ 12.)

Although Plaintiff used up all of her sick leave as a result of the surgery, the District allowed her to "borrow" unearned sick leave from school year 2003-2004.  Nineteen days following the surgery, Plaintiff returned to school in mid-February 2003.  In a letter dated February 11, 2003, Plaintiff's doctor wrote that "[Plaintiff] is now medically cleared to return to work [as of February 14, 2003]."  (Compl. Ex. F.)  There is no indication by Plaintiff's doctor that any limitations were placed on Plaintiff's abilities

**B.**    ***Plaintiff's February 2003 Return to School***

When Plaintiff returned to school, she taught the same classes and students that she taught prior to her surgery.  From the time Plaintiff returned to work until the end of the school year, she missed at most one day of work.

At her deposition, Plaintiff testified that her teaching abilities changed after her surgery.  Specifically, she had to spend more time preparing her lessons, had problems moving around the classroom, getting from one classroom to another and getting up stairs, and had to lean on the board while writing on it.  (Pl.'s Dep., dated July 6, 2007 ("Pl.'s Dep.") at 129.)  In addition, following her surgery, Plaintiff, who speaks English with a foreign accent, feared that it was more difficult for people to understand her because the surgery affected her pronunciation of certain words.  (*Id.* at 130.)  She also testified that it was more difficult for her to hear some of the things that were going on in the classroom while she was teaching.  (*Id.* at 132.)  She stated that she had to use eye drops three to four times every hour to moisturize her eye and that the drops she used blurred her vision.  (*Id.* at 133.)  She developed eye infections that necessitated wearing a patch

covering her left eye.  (*Id.* at 133-34.)  Both the blurry vision and infections impacted her ability to

see what was going on in the classroom.  (*Id.* at 135.)  Sometime in 2004 or 2005, she began using

a new eye medication which does not cause her to have blurred vision.  (*Id.* at 133-34.)  While

recovering from the surgery, she used a walker but did not use a walker or cane once she returned

to work.  (*Id.* at 136.)  Finally, she experienced severe headaches and dizziness after the surgery,

which worsened with time.  (*Id.* at 258-61.)  According to Plaintiff, these headaches interfered with

her ability to teach because they adversely affected plaintiff's ability to function.  (*Id.* at 259.)

 Rose Linda Ricca ("Ricca"), the District Chairperson for Mathematics, never had any

trouble understanding Plaintiff nor did she ever receive any complaints from parents about student

having trouble understanding Plaintiff.

### C. *Plaintiff's Alleged Verbal Requests for Accommodation*

 Immediately following her surgery, Plaintiff did not put into writing any requests

about class assignments.[1]  (*Id.* at 80.)  However, Plaintiff maintains that she made verbal requests

to Ricca, including asking for a whiteboard, as opposed to a chalkboard, to avoid chalk dust which

irritates and infects her eye.  She also allegedly requested to change her schedule so she didn't have

to move from classroom to classroom.  According to Plaintiff, Ricca told her that she couldn't

change her schedule in the middle of the year but would try to change it for the next year.  In her

deposition testimony, Plaintiff testified that although she "preferred to stay on the same floor"

throughout the day (Pl.'s Dep. at 83-84), she conceded that none of her doctors told her in writing

to "stay off the steps."  (*Id.* at 80.)

---

[1]  However, on January 17, 2005, her attorney wrote a letter to the District requesting that
Plaintiff's disability be accommodated.

As part of Plaintiff's job duties, she had hall duty where she walked around the halls. Plaintiff was able to walk and perform her hall duty. (*Id.* at 96.)

**D.** *Classroom Observations*

Non-tenured teachers receive six classroom observations per school year. Ricca performs four of them and either the principal or assistant principal performs the others. An observation lasts the entire class period. During the 2002-2003 school year, Plaintiff's evaluators recommended that Plaintiff change activities within the lessons, break the students into small groups, spread questioning throughout the class and discipline students for being late. Although she received a "Meets District Standards" in most categories, the highest grade available, her evaluations were a mix of positive and negative comments.

**II.** *School Year 2003-2004*

**A.** *Plaintiff's Alleged Requests for Accommodation*

Plaintiff contends that before the start of the 2003-2004 school year, she made verbal requests to limit the amount she would have to move between rooms and that all of her classrooms contain a white board or an overhead projector. She asserts that the District ignored her former request and that her schedule for that year consisted of classes on two different floors and that she fell twice because of her balance problems.

**B.** *The Hiring of a Substitute to Assist Plaintiff*

During the 2003-2004 school year, the District hired a retired math teacher as a permanent substitute in mathematics, Gail Schindelheim. On days when there were no teachers out, she was assigned to Plaintiff's classes in order to assist and support Plaintiff and her students. According to the District, Ms. Schindelheim reported that students were having difficulty

understanding Plaintiff because she was not breaking the material down and was skipping over some of the foundations in mathematics. Plaintiff disputes this allegation, contending that Ms. Schindelheim sometimes read People magazine in the classroom and never mentioned to Plaintiff that the students were having any problems understanding her teaching methods.

**C.** *Change in Plaintiff's Schedule*

In January 2004, the District changed Plaintiff's schedule and took some students from Plaintiff's Math A class and formed another class, allegedly to make Plaintiff's class load lighter. Plaintiff contends that the change was made to accommodate a new younger male teacher and that her load actually got heavier. She also alleges that she requested to take over the classes of a teacher who had left but that her request was denied; instead, a younger male teacher with little teaching experience got the position. Plaintiff does not identify these male teachers.

**D.** *Extension of Plaintiff's Probationary Period*

In the Spring of 2004, toward the end of Plaintiff's two-year probationary term, Plaintiff had a meeting with Ricca and others. The District offered Plaintiff an extension of her probationary term in lieu of termination. According to the District, although Plaintiff was not implementing her supervisors' recommendations regarding teaching, they hoped she would succeed with a third year of probation. According to Plaintiff, no one at the meeting said anything about her teaching abilities and instead, explained that a new superintendent wanted to be in charge of the tenure decisions so her tenure decision had been delayed. On March 25, 2004, Plaintiff signed an agreement with the District extending her probationary term for one additional year.

### E.    *Plaintiff Assigned to Teach Sixth Grade*

At this Spring meeting, Plaintiff was advised that she would be teaching a sixth grade math class in the middle school, which is across the street from the high school, in addition to some high school courses.  Ricca testified that she assigned Plaintiff to teach this class in order to make it easier for Plaintiff; sixth grade math is easier to teach than ninth grade math.  Both parties agree that Plaintiff told Ricca that she preferred to teach at the high school.  However, Defendants contend that Plaintiff never stated that she did not want to teach at the middle school or that she had any objection going from one building to another.  Plaintiff asserts that she mentioned her balance problems and the difficulty she would have moving between buildings.  Plaintiff also contends that she advised them that sixth grade math fell outside of her certification area of seventh to twelfth grades and asked the District not to give her this assignment.  The District counters that the New York State Department of Education has designated the District as an experimental district that is permitted to assign high school teachers to teach middle school students in their specialty area in an attempt to strengthen the middle schools.

### F.    *Classroom Observations*

As with the previous year, Plaintiff's classroom observations for the 2003-2004 school year were a mix of positive and negative comments, with a grade of "Meets District Standards" in most categories.  Some comments included that Plaintiff had trouble breaking down material in a simplistic manner, had trouble engaging students, had classroom management problems, and did not challenge students.

**III.    *School Year 2004-2005***

    **A.    *Plaintiff's Schedule***

In September 2004, Plaintiff was teaching an average of five periods.  She taught in one classroom in the middle school, which had a white board instead of a chalkboard.  According to Plaintiff, because she never taught sixth graders before, it required more preparation on her behalf.

    **B.    *Plaintiff's Alleged Request for Accommodation***

In January 2005, Plaintiff contends that she asked to assume the classes of a Ms. Debra Temple, whose schedule was "less physically demanding," but the District denied her request and gave the assignment to a "brand new teacher."  (Pl.'s Decl. ¶ 16.)  Plaintiff does not identify this teacher.

    **C.    *Plaintiff's Classroom Observations***

Plaintiff's classroom observations for the 2004-2005 school year detail a lack of improvement on Plaintiff's behalf in areas she was deemed insufficient.  Her end of the year evaluation, dated June 17, 2005,  notes that Plaintiff did not implement all of the recommendations that were made to her, she did not implement classroom routines to control behavior, she lost control of her students, she did not provide a variety of instructional strategies, and she was unable to explain material in a simple manner for students to grasp.

    **D.    *Denial of Tenure***

In February 2005, Ricca wrote a memorandum to the deputy superintendent stating that "[d]ue to [Plaintiff's] observations, I do not recommend her for tenure.  Her classroom management is poor and her ability to organize and present new material needs work."  (Decl. of

Brian S. Sokoloff, dated Nov. 21, 2007, Ex. O.) The deputy superintendent then told Freeley, who had become the superintendent for the District in school year 2004-2005, that she was not recommending Plaintiff for tenure.

On May 10, 2005, Freeley recommended to the Board of Education that Plaintiff be denied tenure. The Board voted to accept Freeley's recommendation and terminated Plaintiff's employment effective June 30, 2005. On May 11, 2005, Freeley sent Plaintiff a letter advising her of same.

### E.       *Plaintiff's May 12, 2005 Fall and Workers' Compensation Claim*

Plaintiff crossed the street from the high school to the middle school every day of the 2004-2005 school year. The District had a crossing guard at this crossing. On May 12, 2005, Plaintiff fell from the curb to the street while crossing. It is uncontested that no one pushed Plaintiff, causing her to fall. Following her fall, Plaintiff sought Workers' Compensation benefits.

On May 25, 2007, the New York State Workers' Compensation Board denied Plaintiff's request, finding that Plaintiff had voluntarily withdrawn from the labor market.

## IV.      *Plaintiff's NYSDHR Charge*

On October 6, 2005, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), alleging that she was denied tenure on the basis of her disability, national origin, and age. On June 15, 2006, the EEOC issued Plaintiff a right to sue letter and indicated that the EEOC would be closing her case.

## V.       *The Complaint*

Plaintiff's Complaint asserts ten causes of action: (1) violation of the American with Disabilities Act, 42 U.S.C. §§ 12112-12117 (the "ADA"); (2) violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); (3) intentional infliction of emotional harm; (4) negligent infliction of emotional harm; (5) violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (the "ADEA"); (6) violation of 42 U.S.C. § 1983 ("Section 1983"); (7) violation of 42 U.S.C. § 1985 ("Section 1985"); (8) violation of 42 U.S.C. § 1986 ("Section 1986"); (9) violation of 42 U.S.C. § 1988 ("Section 1988"); and (10) violation of the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq*. ("NYSHRL").

## DISCUSSION

### I.     *Applicable Law and Legal Standards*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions,

or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157 (2d.

Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II.     *Plaintiff Has Failed to Raise a Genuine Issue of Material Fact as to her Discrimination Claims*

Plaintiff's claims of discrimination, be they under Title VII, Section 1983, the ADA, the ADEA, or state law, are all analyzed under the now familiar burden-shifting analysis set forth in *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973). *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (Section 1983 claims), *overruled on other grounds*, *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53 (2006); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (ADA claims); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (ADEA claims); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005) (state claims). Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a

legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that race discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

**A.**   ***Plaintiff Has Failed to Establish a Prima Facie Case of Discrimination Based on Gender, Age or National Origin***

To establish a prima facie case of discrimination, a plaintiff must show that: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).

Here, the only evidence in the record to support Plaintiff's allegations that she was discriminated against on the basis of her gender, age or national origin is Plaintiff's own testimony that: (1) she, at an unknown time and date, overheard unidentified people making remarks "[m]entioning [her] people from [her] country [and] mentioning the war that was happening over there" (Pl.'s Dep. at 256); (2) the District hired all male teachers after Plaintiff was hired (*id.* at 333); (3) a young male teacher with little teaching experience was given a teaching assignment that Plaintiff asked for  (Pl.'s Decl. ¶ 16); and (4) Plaintiff's schedule was changed to accommodate a new young male teacher.  (*Id.* ¶ 17.)  For the reasons stated below, such conclusory assertions, wholly unsupported by the record, are insufficient to create an inference of discrimination.

With regard to Plaintiff's statement that unknown people remarked about her country of origin and the war, it is well-established that stray remarks, even if made by a decision maker, without more, do not constitute sufficient evidence to make out a case of discrimination. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). When other indicia of discrimination are presented, however, "the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." *Id.* In order for the remarks to be deemed significant, the plaintiff must show their nexus to the adverse employment decision. *See, e.g.*, *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 636-37 (S.D.N.Y. 2005) (citing cases). Plaintiff's vague testimony about stray remarks made by unknown people, absent any concrete particulars, is clearly insufficient to support an inference of national origin discrimination.

Plaintiff's allegations regarding the District's preference for younger, male employees is similarly lacking as Plaintiff has presented no evidence to support these assertions. Accordingly, to the extent Plaintiff's discrimination claims are based on age, gender and national origin, they are dismissed.[2]

**B.** **Plaintiff Has Failed to Establish a Prima Facie Case of Discrimination Based on Disability[3]**

---

[2] The Court is underwhelmed, to say the least, with what Defendants label "Plaintiff's smorgasbord approach to this case," invoking virtually every category of discrimination and "hurl[ing] accusations at people without evidence." (Defs.' Reply at 3.) Plaintiff is well-advised to carefully examine the facts and law as required by Rule 11 to avoid unnecessary motion practice in the future.

[3] On September 25, 2008, the ADA was amended. *See* ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008). The Act explicitly states that it "shall become effective on January 1, 2009." *Id.* The Court will therefore not apply the new provisions to the instant case.

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) plaintiff was disabled within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability. *See Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir. 2004) (citing *Cameron v. Cmty Aid for Retarded Children, Inc.,* 335 F.3d 60, 63 (2d Cir. 2003)); *Shannon v. N.Y. City Transit Auth.,* 332 F.3d 95, 99 (2d Cir. 2003). There is no dispute that the District is a covered entity. The Court finds, however, that Plaintiff is not "disabled" within the meaning of the ADA and therefore fails to satisfy the second element of her prima facie case.

### 1.  *Disabled Within the Meaning of the ADA*

A person can demonstrate that she has a disability within the meaning of the ADA in any of three ways. She can show that she (1) has a physical or mental impairment that "substantially limits" one or more "major life activities"; (2) has a "record of such impairment"; or (3) is "regarded as" having such an impairment. 42 U.S.C. § 12102(2). Disability determinations are made on a case by case basis. *Reeves v. Johnson Controls World Servs. Inc.*, 140 F.3d 144, 151-52 (2d Cir. 1998). Plaintiff asserts that she qualifies as disabled under the first and third definitions. The Court examines these two below.

### a.  *Does Plaintiff Suffer From an Impairment That Substantially Limits One or More Major Life Activities?*

To meet the first ADA definition of disability, (1) a plaintiff must show that she suffers from a physical or mental impairment; (2) the plaintiff must identify the activity that is claimed to be impaired and establish that such activity constitutes a "major life" activity; and (3) the plaintiff must show that her physical or mental impairment "substantially limits" the identified

"major life activity." *Jacques,* 386 F.3d at 201; *accord Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 217 (E.D.N.Y. 2007).

> Plaintiff assets that she suffers from the following impairments:
>
> Because of her brain tumor and its subsequent removal, [Plaintiff] has suffered permanent damage to her eyesight, hearing, mobility and motor functions. Her tumor and surgery has removed her ability to hear out of one ear and substantially limited her ability to blink her eye, perceive depth, hear low sounds, balance, walk, climb or descend stairs, drive, speak, stand, spell, move the right side of her face, and recover from injury.

(Pl.'s Mem. at 13.) Defendants do not dispute that Plaintiff suffers from physical impairments. Defendants also do not dispute that major life activities include walking, seeing, hearing, speaking, and working. *See* 29 C.F.R. § 1630.2(i). Defendants do argue, however, that there is no evidence that the side-effects from Plaintiff's brain surgery substantially limited any of her major life activities. The Court agrees.

> "In determining whether a limitation is 'substantial,' courts consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of or the expected long term impact of or resulting from the impairment. . . . For purposes of the ADA, short-term, temporary restrictions are not 'substantially limiting' and do not render a person 'disabled.'" *Conley v. United Parcel Serv.*, 88 F. Supp. 2d 16, 19 (E.D.N.Y. 2000); *see also Capobianco v. City of N.Y.*, 422 F.3d 47, 57 (2d Cir. 2005) (same). As one court has recently noted:

> To establish a disability under the ADA, there must be some proof of permanency. *See Adams v. Citizens Advise Bureau,* 187 F.3d 315, 316-17 (2d Cir. 1999). In other words, the limitation on the claimed major life activity cannot be temporary. *Id.* (temporary neck, back, and knee injury lasting three and a half months not a disability); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir.

> 1998) (temporary impairment of seven months not substantially
> limiting); *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376
> (S.D.N.Y. 2007) (injury lasting only eight weeks not a qualifying
> disability); *Williams v. Salvation Army*, 108 F. Supp. 2d 303, 312-13
> (S.D.N.Y. 2000) ("temporary, non-chronic impairments of short
> duration, with little or no long-term or permanent impact, are usually
> not disabilities.").

*Green v. New York City Health and Hosp. Corp.*, 2008 WL 144828, at * 4 (S.D.N.Y. Jan. 15, 2008).

It is the limitation on the claimed major life activity that must be permanent or have a long term impact. The permanency of the mental or physical condition leading to the impairment is not necessarily sufficient. *See Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184, 198 (2002)[4] (diagnosis alone does not establish a disability within the meaning of the ADA; the impairment's impact must be long term). Moreover, in determining how a particular impairment affects a particular plaintiff, the Court must consider any corrective or mitigating measures taken by that individual. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482-84 (1999).[5] For example, an individual who is able to virtually eliminate the effects of an impairment through medication is not considered disabled for purposes of the ADA. *See id.* at 483; *accord Teachout v. New York City Dept. of Educ.*, 2006 WL 452022 (S.D.N.Y. Feb. 22, 2006).

In addition, to raise an issue of fact as to whether a claimed impairment substantially limits a major life activity, a plaintiff must present more than mere conclusory allegations. Rather, a plaintiff must provide specific information detailing the nature and length of the limitation, together with supporting medical evidence regarding the duration and severity of the impairment's

---

[4] This case has been overruled by the recently enacted amendments to the ADA. *See* ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008). As noted above, however, the amendments do not take effect until January 1, 2009.

[5] This case was also overruled by the recently enacted amendments to the ADA. *See* ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008).

impact on the major life activity at issue. *See, e.g., Mikell v. Waldbaum, Inc.*, 2003 WL 21018844 (S.D.N.Y. May 5, 2003) (conclusory statements about plaintiff's inability to walk, dress herself, and get out of bed, without reference to medical or other evidence regarding the duration and severity of impairment's impact on these activities insufficient to defeat summary judgment); *Mazza v. Bratton*, 108 F. Supp. 2d 167, 175 (E.D.N.Y. 2007) (conclusory assertion in affidavit that plaintiff had difficulty in performing such routine tasks such as cooking, cleaning, shopping and showering insufficient to make a prima facie showing that his ability to care for himself was substantially limited), *aff'd*, 9 Fed. Appx. 36 (2d Cir. 2001) (unpublished summary order). *Cf. Teachout,* 2006 WL 452022, *4 (a plaintiff does not satisfy burden under the ADA by showing impairment "merely affected" a major life activity; a plaintiff must demonstrate that impairment substantially limits those activities). *See generally Montgomery v. Chertoff*, 2007 WL 1233551, at *9 (E.D.N.Y. Apr. 25, 2007) ("Neither 'conclusory statements, conjecture, [n]or speculation' suffices to defeat summary judgment.") (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

Here, Plaintiff has failed to provide sufficient, non-conclusory information to permit a trier of fact to conclude that her impairments substantially limited the major life activity of hearing, seeing, speaking, walking, working, or any other major life activity. The only evidence in the record in this regard is Plaintiff's own testimony in her deposition and her declaration. With regard to her hearing, Plaintiff testified that after her January 2003 surgery, she couldn't hear out of her left ear. However, she also testified that in April 2003, she got a bone anchored hearing aid implanted in her skull which transmits sound coming towards her left side into her right ear. (Pl.'s Dep. at 131-32.) She stated that after the hearing aid was implanted, it was still difficult for her to hear some of the things that were going on in the classroom as compared to before her surgery, but offered no

specific details. (*Id.* at 132.) However, she added that although "[t]here is no perfect hearing aid[, t]his is the most perfect that is on the market." (*Id.*)

To the extent that Plaintiff claims her hearing loss limited the life activities of hearing or working, her inability to hear out of one ear for three months is insufficient to meet the substantial requirement. *Cf. Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 646 (2d Cir. 1998) (temporary impairment of seven months not substantially limiting); *Mescall v. Marra,* 49 F. Supp. 2d 365, 373 (S.D.N.Y. 1999) ("[A]ssuming that [plaintiff] was incapable of performing a broad range or class of jobs from February 1997 through June 3, 1997, the date [plaintiff] claimed she would be able to return to work at P.S. 21, such a temporary mental condition would not qualify as a disability under the ADA."). Moreover, Plaintiff's vague claim that she couldn't hear as well post-implant as she could prior to her brain surgery, absent any specific information detailing the nature and severity of the claimed impairment, is insufficient to create an issue of fact that her hearing *substantially* limited any major life activity.

Compounding the conclusory assertions in her testimony is the lack of any medical evidence to support her claim that she was substantially limited in a major life activity. *See, e.g., Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994) (dismissing ADA claim for lack of medical evidence); *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 392 (S.D.N.Y. 1998) ("plaintiff's testimony as to the alleged limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA"); *Infantolino v. Joint Indus. Bd.*, 2006 WL 3065591, at *6-7 (E.D.N.Y. Sept. 25, 2006) (finding that critical to the plaintiff's failure to submit evidence of any limitation on a major life activity was the absence of medical evidence supporting any limitation); *cf. Johnson v. St. Clare's Hosp. & Health Ctr.*, 1998

WL 213203, at *8 (S.D.N.Y. Apr. 30, 1998) (claim that conduct which led to discharge was the result of disability rejected for failure to provide medical evidence to support causation). In fact, the only medical evidence in the record is a letter from Plaintiff's doctor, dated February 11, 2003, stating that "[Plaintiff] is now medically cleared to return to work [as of February 14, 2003]." (Compl. Ex. F.) There is no indication that any limitations were placed on Plaintiff's abilities. The absence of such medical evidence precludes a trier of fact from concluding that Plaintiff's impairment substantially limited a major life activity.[6]

Plaintiff's other claimed impairments are similarly deficient as there is no evidence in the record which would permit a trier of fact to conclude that these impairments substantially limited a major life activity. The only evidence pertaining to Plaintiff's eye is her own testimony that after the surgery, she had to moisturize her left eye three to four times per hour which caused her to have blurry vision and eye infections. (Pl.'s Dep. at 133-34.) She was in a lot of pain and had to cover up her eye. (*Id.* at 135.) At some point in either 2004 or 2005, she started using a new eye medication that did not blur her vision. (*Id.* at 133; Pl.'s Decl. ¶ 8.)

The only limitation Plaintiff testified about that was caused by her eye problem was that chalk from the blackboard irritated her eye and caused infection. However, she also testified that she was able to perform her job by covering up her eye, which she didn't always do because "[v]ery often . . . [she] forgot that anything [was] wrong with [her] eye." (Pl.'s Dep. at 222.) As with her hearing claim, Plaintiff's conclusory statements, absent any reference to medical or other

---

[6] The Court also notes that an inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working. *See* 29 C.F.R. § 1630.1(j)(3)(I). Rather, a plaintiff must demonstrate she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes . . . ." *Id.* at § 1630.1(j)(3)(j). *See Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001). Plaintiff has made no such showing.

evidence regarding the duration and severity of the impairment's impact on her ability to work, are insufficient to defeat summary judgment. They simply do not demonstrate that Plaintiff was substantially limited in her ability to work on a long-term basis.

Plaintiff's claims based on her alleged inability to walk or speak similarly fail. Other than Plaintiff's conclusory statements that she "feared" that it was more difficult for people to understand her because the surgery affected her pronunciation of certain words (*id.* at 130),[7] or that she had "problems getting up the stairs"[8] and "moving around the classroom" (*id.* at 129), Plaintiff presents no evidence, medical or otherwise, to back up these claims. Moreover, the record contains no detailed evidence as to the severity or duration of these alleged impairments, or the effect of these impairments on her ability to work a "broad range of jobs." 29 C.F.R. § 1630.1(j)(3)(j). Since Plaintiff bears the burden of establishing a prima facie case, her failure to provide sufficient evidence relating to her alleged disability's impairment on her ability to work is fatal to her ADA claim.

In sum, the Court finds that Plaintiff has not presented sufficient evidence for the trier of fact to conclude that she had a physical impairment that substantially limited one or more of her major life activities.

### b.      *Was Plaintiff regarded as disabled?*

---

[7] In fact, it is undisputed that Ricca never had any trouble understanding Plaintiff nor did she ever receive any complaints from parents about students having trouble understanding Plaintiff.

[8] In her deposition testimony, Plaintiff testified that although she "preferred to stay on the same floor" throughout the day (Pl.'s Dep. at 83-84), she conceded that none of her doctors told her in writing to "stay off the steps." (*Id.* at 80.)

Plaintiff also claims that she meets the ADA definition of disabled because the District regarded her as disabled. This claim depends not on the existence of an actual disability but on "the employer's perception of the employee" and is a question of "intent." *Capobianco*, 422 F.3d at 57 (citations and internal quotations omitted). "It is not enough that the employer perceive the employee as somehow disabled; the employer must regard the employee as disabled within the meaning of the ADA, i.e., having an impairment that substantially limits a major life activity." *Id. Accord Jacques,* 386 F.3d at 201; *Colwell*, 158 F.3d at 646.

In support of her argument, Plaintiff contends solely that "[t]here is significant evidence to show a fact finder that Defendants perceived [Plaintiff] as a disabled person and knew of [Plaintiff's] problems walking, seeing, and hearing." (Pl.'s Mem. at 13.) Plaintiff fails, however, to detail what this evidence is. Although there is evidence that during the 2003-2004 school year, the District hired Mrs. Schindelheim as a permanent substitute teacher in mathematics who assisted Plaintiff on days when there were no teachers absent, Ricca testified that Schindelheim was not assigned to "take away the duties of [Plaintiff], nor to diminish [Plaintiff's] role as a teacher." (*Id.* at 145-46.) In addition, the undisputed record demonstrates that Plaintiff was assigned a substantial range of responsibilities and duties throughout her years at the District and that her caseload remained the same after her surgery. In fact, Plaintiff complained that post-surgery, her workload increased. Thus, even assuming Defendants were aware of Plaintiff's ailments, no evidence has been presented to suggest that they viewed her as disabled within the meaning of the ADA, that is, as possessing a medical condition that substantially limited her ability to work.

Moreover, the record does not support an inference "that the District regarded her not merely as unable to work in her specific job, but disabled from a 'broad range of jobs' as

compared with 'the average person having comparable training, skills and abilities." *Doe v. Bd. of Educ. of Fallsburgh Cent. Sch. Dist.*, 63 Fed. Appx. 46, 49 (2d Cir. 2003) (unpublished decision) (quoting *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 82-83 (2d Cir. 2000)); *see also Temple v. Bd. of Educ.*, 322 F. Supp. 2d 277, 281 (E.D.N.Y. 2004) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.") (citation and internal quotation marks omitted). Here, Plaintiff does not even argue, no less put forth evidence, that Defendants regarded her as unable to perform any class of jobs. Her brief argument is limited to Defendants' alleged perception that she could not perform *her* job. This is patently insufficient to sustain her burden. To paraphrase the Second Circuit in *Giordano*: "[Her] assumption that [her] disqualification from the specific duties of [a school teacher] will preclude [her] from working in related fields – or that the defendants perceived [her] as such – is . . . 'speculation and conjecture' which will not suffice to defeat a motion for summary judgment." 274 F.3d at 749.

Accordingly, the Court finds that Plaintiff has failed to proffer sufficient evidence to permit a trier of fact to conclude that she is disabled within the meaning of the ADA. Having failed to establish this element of her prima facie case, her ADA claims must be dismissed.

## C. *Conclusion as to Plaintiff's Discrimination Claims*

For the reasons stated above, Plaintiff has failed to proffer sufficient evidence to defeat summary judgment as to her discrimination claims. Accordingly, Plaintiff's discrimination claims under Title VII, Section 1983,[9] the ADEA, the ADA are dismissed. Plaintiff's claims under

---

[9] Because there is no evidence that Defendants conspired to deprive Plaintiff of the equal protection of the laws, Plaintiff's Section 1985 claim is dismissed. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). Moreover, because Section 1985 liability is a necessary predicate to a Section 1986 claim, Plaintiff's Section 1986 claim fails as well. *Id.* at 147. Finally,

the NYSHRL, however, are dismissed only to the extent they are premised on gender, age, and natural origin discrimination; her NYSHRL claims based on disability discrimination warrant further analysis and are addressed below.

**III.**   *Plaintiff's Hostile Work Environment Claims are Dismissed*

The Complaint does not assert a cause of action for hostile work environment. Nonetheless, in her opposition papers, without *any* citations to the record, Plaintiff asserts that she "worked in a hostile work environment created by Defendants" (Pl.'s Mem. at 18) and that she "has satisfied her burden of proof in demonstrating that her work environment was fraught with age, national origin, gender, and disability discrimination and retaliation." (*Id.* at 19.) She further claims that "[h]er requests for accommodations were denied," "[h]er class assignments became more challenging," and that her "work environment became volatile, unpredictable, intolerable and hostile to the point where she was afraid that further protest would be used against her." (*Id.*)

To establish a hostile work environment claim, a plaintiff must prove "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.*

"This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the

Plaintiff's claim for attorney's fees under Section 1988 is dismissed as well.

victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In analyzing a plaintiff's case, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* (citing *Harris*, 510 U.S. at 23). Relevant factors include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

Finally, it is axiomatic that in order to establish a hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her membership in a protected class. *See Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999).[10]

Insofar as Plaintiff bases her hostile work environment claim on age, national origin, or gender discrimination, her claim must fail as there is no evidence in the record whatsoever that Plaintiff was subjected to a hostile work environment because of her age, gender or national origin. To the extent Plaintiff bases her hostile work environment claim on alleged disability, her claim fails as well.

The Second Circuit has not yet determined whether the ADA gives rise to a cause of action for hostile work environment. *Bonura v. Roebuck & Co.*, 62 Fed. Appx. 399, 400 n.3 (2d Cir. 2003) (unpublished). However, other Circuits and district courts within this Circuit have recognized such a cause of action. *See Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 149-50 (D. Conn. 2008) (collecting cases). These courts have held that if a plaintiff cannot establish that she has a disability within the meaning of the ADA, her hostile work environment claim based on her alleged disability

---

[10] Hostile environment claims are governed by the same standards under Title VII and the NYSHRL. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).

must fail as well.  *See, e.g.*, *Caruso v. Camilleri*, 2008 WL 170321, at *28 (W.D.N.Y. Jan. 15, 2008); *Edwards v. Brookhaven Science Assocs.*, 390 F. Supp. 2d 225, 230-32 (E.D.N.Y. 2005). Because Plaintiff has failed to establish a disability under the ADA, any claim she had for hostile work environment based on alleged disability discrimination is dismissed.

Even assuming that the ADA supports a cause of action of hostile work environment, and assuming further that Plaintiff was disabled within the meaning of the ADA, her claim would still fail as her allegations, viewed as true, do not rise to the level of conduct that is "'severe or pervasive enough to create an objectively hostile or abusive work environment.'" *Alfano*, 294 F.3d at 374 (quoting *Harris*, 510 U.S. at 21)).  Drawing all inferences in Plaintiff's favor,  no rational juror could find that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [Plaintiff's] employment were thereby altered." *See id.* at 373.  Accordingly, Plaintiff's hostile work environment claims are dismissed.

IV.    ***Plaintiff Has Failed to Raise a Genuine Issue***
***of Material Fact as to her Retaliation Claims***

Plaintiff's memorandum of law in opposition to Defendants' motion asserts under a separate heading that "summary judgment is warranted in favor of the Plaintiff as to [Plaintiff's] retaliation claims."  (Pl.'s Mem. at 17 (capitalization omitted).)  Defendant argues that the Court should reject Plaintiff's attempt to assert a cross-motion so late in the day because Plaintiff did not request permission to assert a cross-motion, did not include a notice of motion in her opposition papers, and does not assert a cause of action for retaliation in the Complaint.

Although Defendants are correct that there is no specifically denominated cause of action for retaliation in the Complaint, the pleading does allege that Plaintiff requested reasonable accommodations, that Defendants were aware of such requests, and that Defendants retaliated

against Plaintiff based thereon. (*See* Compl. ¶¶ 21, 24, 33, 48, 62.) These allegations are sufficient to put Defendants on notice that Plaintiff was raising a plausible retaliation claim. *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002). Thus, despite Plaintiff's procedural failings in presenting this issue to the Court, because Defendants address Plaintiff's retaliation claim in their reply papers, the Court discusses it below.

The ADA prohibits retaliation by an employer against its employees in relation to a disability discrimination claim by specifically providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Dismissal of an ADA retaliation claim is not required upon dismissal of an ADA discrimination claim because a successful discrimination claim is not a predicate for a retaliation claim. *See Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 2000). Instead, the Second Circuit has held that a non-disabled individual who files a complaint of disability discrimination is engaging in activity protected under the ADA "so long as [s]he can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." *Sarno*, 183 F.3d at 159.

"Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). In order to establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in protected activity under the ADA; (ii) the alleged retaliator was aware of this activity; (iii) an

adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Id.*

Here, it is undisputed that: (1) on January 17, 2005, Plaintiff's counsel sent a letter to the District complaining of the District's alleged failure to accommodate Plaintiff's disability; (2) on February 28, 2005, Ricca recommended that Plaintiff be denied tenure; (3) in March 2005, Freeley sent Plaintiff a letter notifying her that at the May 2005 Board meeting, she would not be recommending that tenure be granted to Plaintiff; and (4) in May 2005, the Board voted to adopt Freeley's recommendation and terminated Plaintiff's employment effective June 2005. Thus, Plaintiff has established the first three steps of her prima facie case, viz., she engaged in a protected activity of which Defendants were aware and she was subjected to an adverse action, termination. Thus, in order to establish a prima facie case of retaliation, Plaintiff must proffer sufficient evidence to create an inference that a causal connection existed between the letter and Plaintiff's termination.

Temporal proximity alone may suffice to establish causation where proximity is very close. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001); *Kessler v. Westchester County Dept. of Soc. Servs.,* 461 F.3d 199, 210 (2d Cir. 2006). In *Burkybile v. Bd. of Educ.. Of Hastings-On-Hudson Union Free School Dist.*, 411 F.3d 306 (2d Cir. 2005), the Second Circuit acknowledged:

> [t]his Court had not established a specific delay between protected activity and adverse employment action that defeats an inference of causation. *Gorman-Bakos v. Cornell Co-op Extension,* 252 F.3d 545, 554-55 (2d Cir. 2001) (listing cases in the context of Title VII retaliation). We have in the past held that a delay of three months was fatal to a showing of causation, *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990), and that a delay of eight months supported a showing of causation, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980).

*Id.* at 314.

In the present case, Ricca recommended that Plaintiff be denied tenure a mere six weeks after Plaintiff's attorney complained, and Plaintiff was in fact denied tenure two months thereafter. Thus, the Court finds that Plaintiff has satisfied the causal nexus requirement and has established a prima facie case of retaliation.

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. *Id.* at 721. Here, Defendants have articulated legitimate, non-retaliatory reasons for their denial of tenure: Plaintiff's poor performance as reflected in multiple evaluations. *See, e.g.*, *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) ("An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action.").

Once a defendant has articulated a legitimate, non-discriminatory reason for its actions, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the defendant's explanation is merely a pretext for impermissible retaliation. Construing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to meet this burden.

As noted above, Ricca recommended that Plaintiff be denied tenure six weeks after Plaintiff's counsel sent a letter to the District complaining that the District was in violation of the law for failing to accommodate Plaintiff's disability. In attempting to raise an issue of fact on pretext, Plaintiff relies solely on the temporal proximity between the decision to deny her tenure and her attorney's letter, and a January 12, 2005 classroom observation report written by Ricca, which

pre-dates the letter sent by Plaintiff's counsel.[11]  This evaluation is a mix of "commendations," including that Plaintiff properly used regent type questions in her lesson, exhibited a genuine interest in her students, successfully implemented a previous recommendation, and assigned an "excellent" weekly homework sheet, and "recommendations," including that Plaintiff needed to better keep students on task for the full period, use instructional strategies to help improve student performance, and continue working on recommendations from previous observation reports.  (Sokoloff Aff. Ex. N.)  Plaintiff argues that this "favorable" evaluation raises an issue of fact on pretext because despite the fact that Ricca thought highly of Plaintiff on January 12, 2005, she later recommended that Plaintiff be denied tenure after receipt of Plaintiff's counsel's January 17, 2005 letter about the District's failure to accommodate her alleged disability.

        The flaw in Plaintiff's argument is that it ignores the rest of the record.  Even assuming a reasonable factfinder could construe Ricca's January 12, 2005 evaluation as favorable, Ricca wrote another evaluation of Plaintiff, which is not referenced by either party in their briefs, that precedes the January 2005 report and grades Plaintiff's performance as "unsatisfactory." (Sokoloff Aff. Ex. N.)  In this November 16, 2004 evaluation, Ricca noted that Plaintiff exhibited a genuine interest in her students and should be commended for "spiraling assessment type questions."  (Id.)  However, the gravamen of the evaluation is negative:  Ricca found that Plaintiff's classroom management skills were poor; it was "disappointing" that Plaintiff did not implement the recommendations discussed at Plaintiff's last evaluation; Plaintiff's instructions needed to be clearer and more precise; and she needed to further engage her students to stay on task for the full class

_____

[11]  *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir. 1998) (holding that a strong temporal connection between the plaintiff's complaint along with other circumstantial evidence is sufficient to raise an issue with respect to pretext), *abrogated in part on other grounds*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

period. (*Id.*) These negative observations mirror those offered by Ricca in her April 2005 letter explaining why Plaintiff was being denied tenure.[12] (*Id.* Ex. R.) Significantly, then, the reasons cited by Ricca in her letter recommending that Plaintiff be denied tenure are contained in an evaluation which precedes Plaintiff's counsel's request for accommodations, thereby dispelling any inference of pretext.

        Other than the temporal proximity between Plaintiff's protected activities and the alleged retaliatory actions, Plaintiff has failed to proffer any evidence, direct or circumstantial, that any of Defendants' explanations for its activities were merely pretext for retaliating against Plaintiff for his protected activities. The question thus becomes whether the temporal proximity between Defendants' receipt of Plaintiff's counsel's letter and the decision to deny Plaintiff tenure is sufficient to sustain Plaintiff's burden with regard to her retaliation claim. The case law compels the conclusion that it is not. *See Simpson v. N.Y. State Dep't of Civil Servs.*, 166 Fed. Appx. 499, 502 (2d Cir. 2006) ("While the temporal proximity of these events gives rise to an inference of retaliation for the purposes of appellant's prima facie case, without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.") (citing *Quinn*, 159 F.3d at 770) (unpublished); *Martinez v. N.Y. City Dep't of Educ.*, 2008 WL 2220638, at *13 (S.D.N.Y. May 27, 2008) (granting summary judgment where "there [wa]s nothing, beyond Plaintiff's bare conclusory allegations and mere temporal proximity, from which a rational fact-finder could conclude that the transfer constituted retaliation for protected activity"); *Dowrich v. Aramark Healthcare Support Servs., Inc.*, 2007 WL 2572122, at *13 (E.D.N.Y. Sept. 4, 2007) ("[T]emporal proximity, without more, does not demonstrate that a defendant's proffered reason is

---

[12] They are also consistent with other evaluations in the record that precede counsel's January, 17, 2005 letter.

merely a pretext."). Accordingly, the Court finds that Plaintiff has failed to offer sufficient evidence to raise a genuine issue of material fact as to whether the legitimate non-retaliatory reasons given by Defendants for Plaintiff's termination were a subterfuge for illegal retaliation. Accordingly, Plaintiff's ADA retaliation claims are dismissed.[13]

**V.     *Plaintiff's New York State Human Rights Law Claim***

While disability discrimination claims under the ADA and the NYSHRL are analyzed similarly, the definition of disability is broader under the NYSHRL. *See State Div. of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 218-19 (1985); *Shannon v. New York City Transit Auth.,* 332 F.3d 95, 104 n.2 (2d Cir. 2003); *Branson v. Ethan Allen, Inc.*, 2004 WL 2468610, at *3 (E.D.N.Y. Nov. 3, 2004). A disability under the NYSHRL is a condition that either (1) prevents the exercise of a normal bodily function or (2) is "demonstrable by medically accepted clinical or laboratory diagnostic techniques." *Reeves,* 140 F.3d at 155. "Thus an individual can be disabled under the [Human Rights Law] if his or her impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities." *Lovely H. v. Eggleston*, 235 F.R.D. 248, 260 (S.D.N.Y. 2006) (quoting *Hazeldine v. Beverage Media Ltd.*, 954 F. Supp. 697, 706 (S.D.N.Y. 1997)). In other words, any "medically diagnosable impairment" is a disability under the NYSHRL. *Barr v. New York City Trans. Auth.*, 2002 WL 257823, at *8 (E.D.N.Y. Feb. 20, 2002). The Court's grant of summary judgment on the ADA claims is therefore not dispositive of Plaintiff's state law claims.

---

[13]   To the extent Plaintiff's Complaint can be construed as asserting retaliation claims under Title VII, they are dismissed; Plaintiff makes no argument in her brief, nor asserts any evidence in her papers, that she engaged in a protected activity under Title VII.

However, having found that Plaintiff's federal claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL claim, *see* 29 U.S.C. § 1367(a), it declines to do so as resolution of the state claim would require the determination of additional factual and legal issues. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ( holding that dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where the resolution of the state law claims entails resolving additional legal and factual issues), *cert. denied*, 128 S. Ct. 1669 (2008).[14] "While discovery has been completed and the instant case proceeded to the summary judgment stage, it does not appear that any discovery would need to be repeated if [Plaintiff's] pendent claim [was] brought in state court." *Tishman v. The Associated Press,* 2007 WL  at *28-24145556, at *9 (S.D.N.Y. Nov. 19, 2007). Moreover, "'[s]ince [New York CPLR § 205] allows a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiff[] will not be prejudiced by the dismissal of [her NYSHRL] claim[]." *Id.* (quoting *Trinidad v. N.Y. City Dept. of Corr.*, 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006) (alterations in original) (additional citations omitted).

---

[14] The Court further notes that Defendants do not distinguish between Plaintiff's disability claims under the ADA and the NYSHRL in their briefs, which contain no separate analysis of disability under governing New York law.

Accordingly, Plaintiff's NYSHRL claim is dismissed without prejudice.[15]

## CONCLUSION

For all of the above reasons, Defendants' motion for summary judgment is GRANTED. Upon entry of judgment, the Clerk shall close this case.

**SO ORDERED.**

Dated: Central Islip, New York
        September 30, 2008                                    _____/s/_____
                                                             Denis R. Hurley
                                                             Unites States District Judge

---

[15]  The Court similarly declines to exercise supplemental jurisdiction over Plaintiff's claims of negligent and intentional infliction of emotional distress, and any state law claims stemming from Plaintiff's May 2005 pedestrian accident.