UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BILJANA RAGUSA,

                 Plaintiff,                 **MEMORANDUM & ORDER**

  -against-                                06 CV 4905 (DRH) (AKT)

MALVERNE UNION FREE SCHOOL
DISTRICT, MALVERNE UNION FREE
SCHOOL DISTRICT BOARD OF
EDUCATION, and MARY ELLEN FREELEY
as Superintendent of Schools,

                 Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**LAW OFFICES OF LOUIS D. STOBER, JR., LLC**
Attorney for Plaintiff
350 Old Country Road
Suite 205
Garden City, New York 11530
By: Sheila S. Hatami, Esq.

**MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS, LLP**
Attorney for Defendants
The Esposito Building
240 Mineola Boulevard
Mineola, New York 11501
By: Brian S. Sokoloff, Esq.
    Melissa L. Holtzer, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

       Plaintiff ("Plaintiff") Biljana Ragusa filed the present action against defendants Malverne Union Free School District (the "District"), Malverne Union Free School District Board of Education (the "Board"), and Mary Ellen Freeley ("Freeley") (collectively, "Defendants") alleging, inter alia, that Defendants discriminated against her based upon her disability, gender, age, and national origin, and retaliated against her for opposing discriminatory practices. By

Memorandum & Order dated September 30, 2008, the Court granted Defendants' motion for summary judgment. Plaintiff now moves for reconsideration of the Court's dismissal of her gender discrimination claims only. For the reasons that follow, Plaintiff's motion for reconsideration is granted. Upon reconsideration, the Court adheres to its original decision. Accordingly, Plaintiff's gender discrimination claims are dismissed.

## BACKGROUND

The background of this case is set forth in the September 30, 2008 Order, familiarity with which is assumed. Thus, the Court will only state the facts necessary for disposition of the instant motion.

Plaintiff, a female who is currently 54 years old, was born in Bosnia and Herzegovina. Plaintiff began working for the District in September 2002 as a math teacher for a probationary term of two years. Plaintiff is licensed to teach mathematics from grades 7 through 12.

In January of 2003, Plaintiff underwent surgery for removal of an accoustic neuroma, or benign tumor, in her brain. Although the surgery was viewed as a success, it left Plaintiff with many side effects, including that Plaintiff could not blink her right eye, lost hearing in her left ear, had difficulties with balance and walking in a straight line, and couldn't enunciate properly because of paralysis on the right side of her face. Nineteen days following the surgery, Plaintiff returned to school in mid-February 2003.

In the Spring of 2004, the District offered Plaintiff an extension of her probationary term in lieu of termination. On March 25, 2004, Plaintiff signed an agreement with the District extending her probationary term for one additional year. At the conclusion of that year, Plaintiff was denied tenure and her employment terminated.

On October 6, 2005, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging that she was denied tenure on the basis of her disability, national origin, and age. On June 15, 2006, the EEOC issued Plaintiff a right to sue letter and indicated that the EEOC would be closing her case.

On September 11, 2006, Plaintiff filed the instant lawsuit. Her Complaint asserted ten causes of action: (1) violation of the American with Disabilities Act, 42 U.S.C. §§ 12112-12117; (2) violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); (3) intentional infliction of emotional harm; (4) negligent infliction of emotional harm; (5) violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.; (6) violation of 42 U.S.C. § 1983; (7) violation of 42 U.S.C. § 1985; (8) violation of 42 U.S.C. § 1986; (9) violation of 42 U.S.C. § 1988; and (10) violation of the New York State Human Rights Law, N.Y. Exec. Law § 296, et seq. The gravamen of Plaintiff's Complaint was that Defendants refused to accommodate Plaintiff's "disability"; that they intentionally created a difficult working environment for Plaintiff by scheduling her to work in different classrooms on different floors, requiring her to travel between the high school and middle school buildings which were across the street from one another, and by assigning her subjects beyond her certification; and that they terminated her under based upon her disability, age, and national origin.

By Memorandum & Order dated September 30, 2008, the Court granted Defendants' motion for summary judgment with regard to Plaintiff's federal claims and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff now moves for reconsideration

with regard to her claim of gender discrimination only. For the reasons that follow, Plaintiff's motion is granted. Upon reconsideration, Plaintiff's claim of gender discrimination is dismissed.

*DISCUSSION*

**I.** *Applicable Legal Standard for Reargument*

The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "party may not advance new facts, issues, or arguments not previously presented to the Court." *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

## II. *Plaintiff's Motion for Reconsideration is Granted; Upon Reconsideration, Plaintiff's Claim of Gender Discrimination is Dismissed*

### A. *The September 30, 2008 Order*

In the September 30, 2008 Order, the Court noted that the only evidence in the record to support Plaintiff's allegations that she was discriminated against on the basis of her gender was Plaintiff's own testimony that: (1) the District hired all male teachers after Plaintiff was hired; (2) a young male teacher with little teaching experience was given a teaching assignment that Plaintiff asked for; and (3) Plaintiff's schedule was changed to accommodate a new young male teacher. Because Plaintiff presented no evidence to support these assertions, the Court found that Plaintiff had failed to create an inference of gender discrimination. The Court also noted that it was "underwhelmed, to say the least, with what Defendants label 'Plaintiff's smorgasbord approach to this case,' invoking virtually every category of discrimination and 'hurl[ing] accusations at people without evidence.'" (Sept. 30, 2008 Mem. & Order at 14 (quoting Defs.' Reply at 3.))

### B. *Plaintiff Meets the Standard for Reargument*

In support of her motion for reconsideration, Plaintiff asserts that she has new evidence which supports her claim of gender discrimination. In order to understand Plaintiff's argument, a brief procedural history is required.

By Order dated August 27, 2007, Magistrate Judge Tomlinson issued rulings on Plaintiff's motion to compel discovery and extended the discovery deadline to September 7, 2007. She also set a briefing schedule with regard to Plaintiff's motion to compel disclosure of student records, which motion was filed on September 24, 2007.

By Amended Case Management and Scheduling Order filed on August 27, 2007, Judge Tomlinson set a deadline of September 28, 2007 for the parties to file pre-motion conference

requests regarding dispositive motions. Pursuant to that Order, on September 28, 2007, Defendants filed a request for leave to file a motion for summary judgment. Plaintiff responded by letter filed October 1, 2007. No mention was made of any outstanding discovery disputes by either party. On October 10, 2007, the Court issued a briefing schedule and Defendants' motion for summary judgment was filed fully briefed on January 18, 2008.

On January 22, 2008, Judge Tomlinson granted the parties' request for an adjournment of the filing of the pre-trial order. She directed that the pre-trial order be filed within thirty days of this Court's decision on Defendants' motion for summary judgment, should such motion be denied.

On February 19, 2008, Judge Tomlinson granted Plaintiff's motion to compel disclosure of student records. More specifically, Plaintiff sought disclosure of "any and all documents, notes, or recordings of any kind including but not limited to the grades and/or evaluations given to any and all pupils regarding academic performance and behavior in the Plaintiff's former department of employment by the Defendants, Mathematics Department, from June 2002 to present." (Feb. 19, 2008 Order at 1-2.) Defendants were directed to serve Plaintiff with a copy of these redacted records within thirty days. By Order dated March 14, 2008, Defendants were granted a thirty day extension to produce the records. Neither party made any application to this Court to supplement the summary judgment papers with regard to these records. On September 30, 2008, the Court issued its decision granting Defendants' motion for summary judgment.

Plaintiff now moves for reconsideration, asserting that "Plaintiff did not have access to this evidence for the Court's consideration on January 4, 2008, when she submitted her response
-6-

to the motion for summary judgment." (Pl's Am. Mem. of Law in Supp. of Mot. to Reconsider at 4-5.) While this statement is correct, Plaintiff does not address her failure to move to supplement the record once she did receive these records, which was months before this Court issued its decision. Although the Court is troubled by Plaintiff's attempt to raise this evidence at the eleventh hour, and months after she received it, given that the Court did not have these records when it decided Defendants' motion, in the interests of justice, the Court grants reargument so that it may consider them. Upon reconsideration, Plaintiff's claim for gender discrimination is dismissed.

### C. *Plaintiff's Gender Discrimination Claim is Dismissed*

#### 1. *Plaintiff's Gender Discrimination Claim is Not Barred*

Before addressing the substance of Plaintiff's claim for gender discrimination as it pertains to the new records, the Court first addresses Defendants' argument that any such claims are barred because Plaintiff failed to assert that she was discriminated against on the basis of gender in her Complaint filed with the NYSDHR (hereinafter referred to as the "NYSDHR Complaint"). The NYSDHR Complaint alleges that Plaintiff's "disability, national origin and age are the basis for [her] termination and denial of tenure" (Decl. of Brian S. Sokoloff, dated Nov. 21, 2007, Ex. V ¶ 14), and that Plaintiff was "singled out due to [her] disability, national origin, and age, (*id.* ¶ 18). In addition, at the end of the NYSDHR Complaint, Plaintiff alleges that "[b]ased on the foregoing, [she] charge[s Defendants] with unlawful discriminatory practices related to employment . . . because of [her] disability, national origin, and age." (*Id.* at unnumbered page 4.) These allegations do not seek redress based on gender discrimination.

There are, however, two references to discrimination based on gender. Paragraph 5 of the NYSDHR Complaint alleges that Defendants "discriminated against [Plaintiff] on the basis

of [her] disability, age and sex by requiring [her] to maintain a more rigorous class schedule than other teachers without perceived disabilities." (*Id.* ¶ 5.) Moreover, the conclusory portion of the NYSDHR Complaint charges Defendants with violating Title VII which Plaintiff asserts "covers race/color, creed/religion, national origin and sex." (*Id.* at unnumbered page 4.)

It is well-settled that a plaintiff cannot raise a Title VII discrimination claim without first exhausting administrative remedies. *See, e.g.*, *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001). The exhaustion of administrative remedies is "an essential element of Title VII's statutory scheme," *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds* as recognized in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998), and is designed "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 98 (2d Cir. 1985). Pursuant to the exhaustion requirement, a district court only has jurisdiction over Title VII claims that are either included in an EEOC charge or are "reasonably related to those that the plaintiff did assert before the agency." *Fitzgerald*, 251 F.3d at 359. A claim is considered reasonably related if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) (internal quotation marks and citations omitted). The "reasonably related" exception to the exhaustion requirement "'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.'" *Deravin v. Kerik*, 335 F.3d 195, 201 (quoting *Butts*, 990 F.2d at 1402).

Here, although the thrust of Plaintiff's NYSDHR Complaint is discrimination based on disability, age and national origin, the pleading, although not a model of clarity, does expressly allege that Defendants discriminated against her on the basis of her "sex." (Decl. of Brian S. Sokoloff, dated Nov. 21, 2007, Ex. V ¶ 5.) Given this explicit reference to gender discrimination, the Court finds that the NYSDHR should reasonably have been expected to investigate this claim. Accordingly, the Court finds that Plaintiff's claim of gender discrimination is not barred.

### 2. *Plaintiff has Failed to Raise an Inference of Gender Discrimination*

Plaintiff asserts that the student records received from Defendants establish an inference of gender discrimination because they show that Plaintiff was denied "several prime teaching opportunities that [Defendants] granted to less qualified male teachers." (Pl.'s Am. Mem. of Law in Supp. of Mot. to Reconsider at 7.) Plaintiff proffers four examples of this alleged gender discrimination. The Court will address them in turn.

#### a. *Defendants' Alleged Failure to Reassign Plaintiff to a Lighter Load*

Plaintiff maintains that Debbie Temple, a tenured math teacher, left in December of the 2003-2004 school year. Because of Plaintiff's alleged disability, Plaintiff requested to take over Ms. Temple's classes – which were comprised of a "lighter load" – but Rose Linda Ricca ("Ricca"), the District Chairperson for Mathematics, told Plaintiff that she could not change the schedule in the middle of the year. "However, Mrs. Ricca assigned the classes of Ms. Temple mid-year to Rich Fiola in 2003-2004, although [Plaintiff] had requested to teach Ms. Temple's classes. Mr. Fiola, also an untenured teacher, had just been hired and did not have the previous teaching experience like [Plaintiff]." (*Id.* at 7-8.)

Plaintiff raised this argument in her opposition papers to Defendants's original summary judgment motion. It was rejected by the Court at that time; Plaintiff asserted only that she asked to assume the classes of Ms. Temple, "whose schedule was 'less physically demanding,' but the District denied her request and gave the assignment to a 'brand new teacher.'" (Sept. 30, 2008 Mem. & Order at 8 (quoting Pl.'s Decl., dated Jan. 4, 2008, ¶ 16).) Plaintiff did not identify the new teacher.

Plaintiff now attempts to remedy this defect by supplying the name, to wit, Mr. Fiola, a supposedly similarly situated male teacher. The problem with this effort is twofold. First, the identification of Mr. Fiola does not arise out of the "new evidence" upon which Plaintiff relies, i.e., the student records, and Plaintiff proffers no reason why she was unable to identify him previously. Next, Plaintiff once again fails to submit any evidence in support of her claims that Mr. Fiola received Ms. Temple's job and that this assignment was preferential because it offered a "lighter load." Instead, all that is offered is counsel's argument to this effect in Plaintiff's memorandum of law. A memorandum of law is not evidence. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("[M]ere conclusory allegations or denials' in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citations and internal quotation marks omitted). Accordingly, Plaintiff's claims concerning Mr. Fiola will not be considered by the Court.[1]

---

[1] Although Plaintiff's Amended Memorandum of Law in Support of Motion to Reconsider cites to Plaintiff's January 4, 2008 Declaration and specified lines in Ricca's deposition, both of which were cited previously in the original motion for summary judgment, nowhere in these documents is there any support for Plaintiff's factual assertions. (*See* Pl.'s Am. Mem. of Law in Supp. of Mot. to Reconsider at 3.)

### b. *Plaintiff's Reassignment to the Middle School*

Plaintiff argues that her assignment to a sixth grade class at the middle school raises an inference of gender discrimination. More specifically Plaintiff asserts, as she did in her opposition to Defendants' motion for summary judgment, that Plaintiff was advised in the Spring of 2004 that she would be teaching a sixth grade math class in the middle school in addition to some high school courses. The middle school is across a busy intersection from the high school. Plaintiff claims that she told Ricca that she did not want to go from building to building due to her alleged disability and balance problems. Plaintiff also contends that she advised Ricca that sixth grade math fell outside of her certification area of seventh to twelfth grades and asked the District not to give her this assignment. Ricca testified that she assigned Plaintiff to teach this class in order to make it easier for Plaintiff; sixth grade math is easier to teach than ninth grade math.

Plaintiff now claims that this assignment to the middle school raises an inference of gender discrimination because "[f]or 2004-2005, the year that [she] had to move between the high school and middle school, Mr. Nehlsen had all of his classes at the high school." (*Id.* at 3.) Plaintiff also asserts that "Mr. Fiola had all but one class, 'Homeroom' in the same room at the high school."

Plaintiff's argument suffers from the same infirmity as her claim above in that it is not based on any new evidence. Plaintiff raised this argument in opposition to Defendants' motion for summary judgment, viz. that Defendants wrongly denied her request to teach solely at the high school. The only difference is that Plaintiff now compares her treatment to that of Mr. Nehlsen and Mr. Fiola in an effort to raise an inference of gender discrimination. This comparative evidence did not develop from the new school records and Plaintiff has proffered no excuse for her delay in presenting it. Accordingly, it is not properly considered on reconsideration.

Even if the Court were to consider this evidence, it is woefully inadequate. Plaintiff's own evidence demonstrates that Mr. Nehlsen and Mr. Fiola were not the only math teachers whose assignments were limited to the high school for the 2004-2005 school year. (*See* Decl. of Sheila Hatami, dated Jan. 4, 2008, Ex. S.) Plaintiff's copies of the teacher schedules for the high school reveal that both Diane Pryor and Rachel Ruisi also taught classes in the high school only, as well as other teachers whose gender cannot be ascertained from the records. As noted by Defendants albeit in a different context, "Plaintiff cannot defeat a summary judgment motion by cherry-picking [evidence] to concoct some claim of disparity." (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Reconsideration at 5.) Accordingly, the Court finds that Plaintiff's claims regarding her assignment to the middle school are insufficient to raise an inference of gender discrimination.

        **c.**      *Plaintiff's Assignment of Special Education Students*

Plaintiff's third and fourth examples of purported gender discrimination are related and accordingly will be discussed together. In essence, Plaintiff claims that the student records produced by Defendants demonstrate that Defendants gave preferential treatment to similarly situated male teachers by assigning them fewer students, and in particular fewer special education students, than Plaintiff. In support of this claim, Plaintiff submits that

> Instead of accommodating [Plaintiff's] requests for a lighter load because of her disability, the District gave a lighter class load to Daniel Nehlsen. Mr. Nehls[e]n taught the same subject in 2003-2004 as [Plaintiff], but he had no classified special education students. Mr. Nehlsen also had fewer students than [Plaintiff], just thirteen compared to her twenty-one.

(Pl.'s Am. Mem. of Law in Supp. of Mot. to Reconsider at 8; *see also id.* at 2 (citing Am. Decl. of Sheila S. Hatami, Esq., dated Oct. 14, 2008 ("Am. Hatami Decl."), Exs. J and K).) Plaintiff also asserts that "in 2002-2003, Rachel Ruissi had six special education students assigned to her teaching

load, whereas Michael Bank, teaching the same subject, had none." (*Id.* at 9 (citing Am. Hatami Decl., Exs. E and F).)

The problem with Plaintiff's arguments is that, as Defendants point out, Plaintiff has only provided one class list for Mr. Mazzola, one class list for Mr. Bank, and two class lists for Mr. Nehlsen out of their entire respective caseloads, while she has provided the Court with nine class lists for herself. Thus, she has not provided the Court with a sufficient basis to analyze the male teachers' class compositions as compared to hers. Moreover, with regard to the class lists the Court does have, Plaintiff has selectively chosen lists to rely upon which support her argument, to the exclusion of the remainder of the record.

For example, in support of her argument of gender disparity with regard to Plaintiff and Mr. Nehlsen, Plaintiff relies on Exhibits J and K. A review of these records reveals that during the 2003-2004 school year, both Plaintiff and Mr. Nehlsen taught "Intro to Math A R/L." Exhibit K contains two class lists for Mr. Nehlsen for the year 2003-2004 school year. The documents are virtually identical, indicating that Mr. Nehlsen taught an Intro to Math A R/L class that year with thirteen students and setting forth each student's grades throughout the year. The only difference between the two lists is that the first one labels one of the students as a special education student while the second does not. In her memorandum of law, Plaintiff vaguely implies that these two class lists which "appear to be a similar document" represent the same class. (Pl.'s Am. Mem. of Law in Supp. of Mot. to Reconsider at 2 n.1; *id.* at 8.) In their memorandum of law, Defendants maintain that the records reflect two separate classes. Neither party properly explains the records in an admissible affidavit. In any event, as best the Court can discern from the available documents, the

records reveal that for the 2003-2004 school year, Mr. Nehlsen taught one to two classes of Intro to Math A R/L, with thirteen students per class, and one classified with special education needs.

Exhibit J indicates that for the 2003- 2004 school year, Plaintiff also taught an Intro to Math A R/L class and that her class had 21 students. Although Plaintiff states in her memorandum of law that 13 of the 21 students were classified as special education students (*id.* at 2), a review of the records contained in Exhibit J reveal that only 3 of the 21 students were so classified. (*See* Am. Hatami Decl., Ex. J.)

Plaintiff argues that the discrepancies revealed in these two exhibits raises an inference of gender discrimination because Mr. Nehlsen was a similarly situated teacher who received preferential treatment, viz. fewer students in general as well as fewer special education students. There are other class lists in the record, however, which indicate that Plaintiff taught several math classes that year. For example, she taught Intro to Math A R, a class with eight students, seven of whom were classified as special education students. (*Id.* Ex. G.) She also taught Math A-E/L, a class with ten students, none of whom was classified special education (*id.* Ex. H), and Intermediate Algebra, a class with 16 students, one of whom was classified special education. (*Id.* Ex. I.) Only one other record is provided as to Mr. Nehlsen which shows that he taught Math A-E/L, a class with thirteen students, none of whom was classified special education. (*Id.* Ex. L.)

Viewed in toto, these documents reveal that contrary to Plaintiff's assertions, on average, Plaintiff's classes did not contain more students than Mr. Nehlsen's for the 2003-2004 school year.[2] In any event, any comparison of Plaintiff and Mr. Nehlsen is immaterial absent a

---

[2] Mr. Nehlsen's classes contained 13 students each; Plaintiff's classes contained 21, 8, 10, and 16 students respectively, averaging out to 13.75 students per class.

complete record for the 2003-2004 school year setting forth *all* of the class lists for *all* of the similarly situated math teachers.[3]

Given that the class lists do not demonstrate a disparity in the number of students assigned to Plaintiff and Mr. Nehlsen, at best, the class lists demonstrate that Plaintiff had more special education students than Mr. Nehlsen. As with the number of students, however, such a statistic is meaningless absent information with regard to all of the similarly situated teachers. Moreover, Plaintiff has failed to proffer any evidence, other than her own conclusory statements in her memoranda, as to how the assignment of more special education students constituted an adverse employment action.[4] Accordingly, the Court finds that Plaintiff's claims regarding class assignments are insufficient to raise an inference of gender discrimination.

---

[3] Despite the fact that Plaintiff repeatedly relies on the class lists in her memoranda to demonstrate the number of students per class, Plaintiff states in her Reply Memorandum that "[t]he class lists show only grades, not the number of students in a class." (Pl.'s Reply at 1.) Although the student names have all been redacted, it seems apparent from the lists how many students were in each class. Nonetheless, given the confusion created by Plaintiff as to the contents of the class lists, and the absence of an affidavit by an individual with personal knowledge specifically explaining the nature thereof, it would seem that the lists are of limited evidentiary value.

[4] The Supreme Court has stated that in order to be actionable under federal discrimination laws, an adverse employment action must be "tangible" or "material." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.") (citation and internal quotation marks omitted). A "tangible employment action" connotes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* "Materially adverse" employment actions can also include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . or other indices . . . unique to a particular situation." *Feingold v. N.Y.*, 366 F.3d 138, 152 (2d Cir. 2004) (citations and internal quotations omitted). However, a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or material adverse employment action. *Burlington Indus., Inc.*, 524 U.S. at 761 (internal quotations and citations omitted).

## CONCLUSION

For all of the above reasons, Plaintiff's motion for reconsideration is granted. Upon reconsideration, the Court adheres to its original decision and Plaintiff's claims of gender discrimination are dismissed.

**SO ORDERED.**

Dated: Central Islip, New York
   August 11, 2009

                          /s/
                      Denis R. Hurley
                      Unites States District Judge